UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PERRIGO PHARMA INTERNATIONAL DESIGNATED ACTIVITY CO., <br><br> *Plaintiff,* <br><br> v. <br><br> MEAD JOHNSON & CO. LLC <br><br> *Defendant.* | Civil Action No. <br><br> **COMPLAINT** |

Plaintiff Perrigo Pharma International Designated Activity Company ("Perrigo"), for its Complaint against Mead Johnson & Co. LLC ("Mead Johnson"), alleges upon knowledge as to itself, and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1. This is a case for specific performance to compel Mead Johnson, a specialized packager of infant formula, to satisfy its express contractual obligations to Perrigo, in order to permit Perrigo as manufacturer to supply critically needed infant formula in the midst of a severe, highly publicized infant formula shortage. Despite its urgent efforts to resolve this matter of public interest outside of court, Perrigo in the face of delay and obfuscation by Mead Johnson is forced to seek emergency relief by judicial means in order to avoid discarding infant formula otherwise ready to be packaged while significant shortages affecting infants persist. Monetary damages, standing alone, cannot adequately compensate Perrigo for the harm caused by Mead Johnson's intentional breaches, let alone the harm to the public health of infants. Absent the judicial relief requested herein, the supply of infant formula will be jeopardized in important respects and Perrigo and its affiliates will face disruption to long-standing and valuable customer relationships. Perrigo

has already shut down production at an infant formula production facility with repercussions for the livelihood of employees.

2. In breaching the Agreement, Mead Johnson's refusal to pack infant formula that Perrigo has already manufactured means that hundreds of thousands of pounds of infant formula are at risk of expiration before packaging. This is a case that involves significant public interest, as it takes place during an acute shortage of infant formula. Because Mead Johnson refuses to pack Perrigo's infant formula in amounts consistent with the Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Without the injunctive relief sought herein, Perrigo and its affiliates also will suffer the irreparable harm that naturally and inevitably flows from Mead Johnson's breach of the Agreement, including loss of reputation, good will, business opportunities, and customer relationships. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ All aspects of this harm are immediate and incalculable in dollars and cents.

3. By assignment, Mead Johnson assumed the supply obligations to Perrigo of Maple Island, Inc. ("Maple Island") that commenced in 2019. Mead Johnson (a major infant formula manufacturer) acquired Maple Island in 2021 and required Perrigo's consent to complete that transaction. Pursuant to the Agreement, as amended by the January 2021 Consent, in an effort to protect its interests in a transaction with a major infant formula manufacturer, Perrigo required Mead Johnson to reserve sufficient capacity to pack Perrigo's infant formula. Specifically, in order

to receive Perrigo's consent, Mead Johnson agreed to reserve the following infant formula packing capacity exclusively for Perrigo:

| Year | Capacity Commitment for Regular Infant Formula | Capacity Commitment for Extensively Hydrolyzed Infant Formula (hypoallergenic) |
|---|---|---|
| 2021 | ███ | ███ |
| 2022 | ███ | ███ |
| 2023 | ███ | ███ |

4. As displayed above, Mead Johnson committed to packing ███ of Regular Infant Formula and ███ of Extensively Hydrolyzed Infant Formula (also known as Hypoallergenic Infant Formula ("EH Formula")) in 2022, for a total of ███.[1] However, Mead Johnson is currently on pace to pack a total of only ███ of Perrigo infant formula in 2022—a serious breach of the Agreement. In fact, even if Mead Johnson packs the remaining hundreds of thousands of pounds of product that Perrigo has already manufactured, Mead Johnson will still have packed *less than* ███ of its ███ commitment in 2022.

5. Additionally, on December 9, 2022, representatives of Mead Johnson and Perrigo attended a teleconference during which representatives of Mead Johnson stated for the first time that Mead Johnson would only be packing ███ in December 2022 and ███ in January 2023, that it would ███ for Perrigo in February and March, that it would ███ for Perrigo in the first quarter of 2023, and that it would get back to Perrigo within 30 days regarding whether it could pack infant formula for them ███.

6. On December 12, 2022, representatives of Mead Johnson and Perrigo attended a subsequent teleconference during which representatives of Mead Johnson again stated that Mead

---

[1] It is important to note that the EH infant formula is for infants with an inability to tolerate regular infant formula. EH infant formula is the only product many of those infants can digest.

Johnson would only pack ■■■■■■■■ of Perrigo infant formula currently sitting at both Mead Johnson and Perrigo's respective facilities in December, and ■■■■■■■■ in January. Due to Mead Johnson's refusal to fulfill its obligations under the Agreement, without swift judicial intervention, hundreds of thousands of pounds of infant formula are at risk of expiration before packaging.

7. In a letter dated December 19, 2022, Mead Johnson indicated that it could not fulfill its infant formula packing obligations to Perrigo pursuant to the Agreement due to commitments to the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"). Perrigo of course understands the importance of this program—Perrigo also supports it with its own infant formula. Moreover, Mead Johnson's use of its alleged WIC supply commitments as a reason not to honor its contractual commitments is disingenuous. Mead Johnson has been able to produce and sell over 35 million pounds of non-WIC product in the United States thus far in 2022. Additionally, Perrigo, like other U.S. infant formula manufacturers, also provides product to WIC participants. In fact, the United States Department of Agriculture Food and Nutrition Service recently announced on December 19, 2022, that it is extending waivers to allow for non-contract formula and alternative sizes—like Perrigo's and Mead Johnson's products—for contract formula through the end of February 2023.

8. In addition, Perrigo has reason to believe Mead Johnson has taken advantage of the United States government's suspension of infant formula tariffs, which are set to expire on December 31, 2022, to import a large volume of infant formula into the United States that is packaged at Mead Johnson. Though Mead Johnson remains under clear contractual obligations to pack agreed volumes of Perrigo's infant formulas, Mead Johnson applied for and was given approval by the United States Food and Drug Administration ("FDA") to import infant formula

from Mead Johnson's facilities in Singapore. Perrigo believes that Mead Johnson is unilaterally reducing the volume of product it will pack for Perrigo so that it can instead pack more of its own product, including, Perrigo believes, this new supply of product from Singapore, and thereby reap a windfall by avoiding the tariff suspension deadline. If true, then Mead Johnson's inability to honor its contractual commitments has nothing to do with supporting the WIC program, as Mead Johnson claims. Rather, it is a plain and simple case of tariff avoidance, which benefits Mead Johnson at the expense of Perrigo and its affiliates' customers, and benefits foreign workers at the expense of American workers.

9. Perrigo is entitled to the injunctive relief it seeks pursuant to Rule 65 of the Federal Rules of Civil Procedure as well as monetary damages. If Mead Johnson does not pack Perrigo's infant formula consistent with the Agreement, a substantial amount of infant formula will expire, eliminating much needed infant formula from the market. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Absent judicial relief, Perrigo's customers—which include major retailers throughout the United States—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In fact, the fact that Mead Johnson is a major participant in the sale of infant formula in the United States makes matters even worse as Mead Johnson's actions taken as a whole raise clear and troubling anti-competitive issues. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Accordingly, the Court should grant Perrigo's request for temporary and preliminary relief.

## THE PARTIES, JURISDICTION AND VENUE

10. Perrigo is incorporated and registered in Ireland with company number 222276. Perrigo's principal place of business is at The Sharp Building, Hogan Place, Dublin 2, Dublin D02 TY74.

11. Upon information and belief, Mead Johnson is a limited liability company, organized under the laws of the State of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company.

12. Upon information and belief, Mead Johnson Nutrition Company is a corporation incorporated under the laws of the State of Delaware. Its principal place of business is Evansville, Indiana. Thus, Mead Johnson is a citizen of Delaware and Indiana.

13. This Court has subject matter jurisdiction over Perrigo's claims pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

14. This Court has personal jurisdiction over Mead Johnson because the operative agreement between Perrigo and Mead Johnson contains a clause, Section 14.10, stating that "the parties submit to the exclusive jurisdiction of the New York Courts."

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because there is no district in which this action may otherwise be brought as provided in §1391(b).

## FACTUAL ALLEGATIONS

16. In late 2021, certain areas within the United States began to experience shortages of infant formula, and in February 2022, Abbott Laboratories ("Abbott"), a major manufacturer of infant formula, announced a recall further contributing to severe and acute infant formula shortages in the United States. Unlike other products, there is not an available or acceptable substitute for

infant formula. Prior to the recall, Abbott manufactured over 40% of infant formula in the United States. As of mid-2022, many states had an out-of-stock rate for infant formula of between 40-50%. In the wake of the Abbot recall, Perrigo took the crisis so seriously that its CEO participated in a public videoconference with the President of the United States and other government officials on solutions to address the industry shortage.

17. Perrigo's Consumer Self-Care Americas segment develops, manufactures and markets over-the-counter branded and private label self-care products, primarily health and wellness solutions that enhance individual well-being, including cough and cold remedies, smoking cessation, allergy products, analgesics, oral care products and infant formula. As a leading provider of over-the-counter health and wellness solutions, Perrigo provides consumers across the socioeconomic spectrum with access to high-quality, affordable self-care products. The store brand model allows Perrigo's products to be sold at a significantly lower price to consumers than the comparable national brand products.

18. This action for specific performance is initiated to enforce Mead Johnson's obligations pursuant to a January 2019 agreement between Mead Johnson and Maple Island as modified and supplemented by an addendum dated March 27, 2020, and as amended by an amendment dated March 27, 2020, ("Amendment"), and the Consent to Assignment to Mead Johnson dated January 20, 2021 ("Consent," and collectively with the Amendment and the January 2019 agreement as modified and supplemented by the March 2020 addendum, the "Agreement") to provide specialist packing services for Perrigo's infant formula, including but not limited to packing EH Formula, as well as regular infant formula.

19. Perrigo has performed as required in all material respects to satisfy its obligations under the Agreement. The facts of this case are simple and Perrigo's right to relief is obvious.

20. Section 3.3 of the Agreement states that: "During the Term, [Mead Johnson] will provide [packaging services] and deliver Product to Perrigo ... those quantities of Product that Perrigo instructs [Mead Johnson] to can pursuant to purchase orders that Perrigo issues to [Mead Johnson] from time to time."

21. Section 13.1 of the Agreement states that: "No party will be held liable or responsible for failure or delay in fulfilling or performing any of its obligations under this Agreement if such failure or delay is caused by [a Force Majeure Event] ... The Parties acknowledge and agree that _**excusable delays do not include, among others, those resulting from a shortage of labor, supplies or materials**_ (unless such supplies or materials are to be provided by the other Party), or transportation difficulties." (Emphasis added.)

22. In January 2021, Mead Johnson, a major infant formula manufacturer, sought to acquire the Maple Island Wanamingo facility that packed Perrigo's infant formula. For the acquisition to be completed, Perrigo's consent was required to assign the Agreement (as amended) to Mead Johnson.

23. Perrigo was concerned that a major infant formula manufacturer was purchasing the Maple Island facility, and therefore negotiated specific provisions in the Consent in order to continue to protect Perrigo's interests given Maple Island facility was—and continued to be—a critical supplier for Perrigo. First, Perrigo required Mead Johnson to reserve sufficient capacity to supply Perrigo's defined requirements for infant formula. Specifically, in order to receive Perrigo's consent, Mead Johnson agreed to reserve the following capacity exclusively for Perrigo:

| Year | Capacity Commitment for Regular Infant Formula | Capacity Commitment for Extensively Hydrolyzed Infant Formula |
|---|---|---|
| 2021 | ███████ | ███████ |
| 2022 | ███████ | ███████ |
| 2023 | ███████ | ███████ |

8

24. Second, recognizing the materiality of the supply obligations, the parties negotiated and agreed to an extensive termination for convenience clause in the Consent in order to allow Perrigo sufficient opportunity to identify another vendor in the event the contract with Mead Johnson was terminated. ██████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

### *Requirements for Packing Infant Formula*

25. A manufacturer of infant formula must obtain clearance from the FDA for each specific formulation it intends to bring to the infant formula market. This clearance includes specific manufacturing and packaging sites that may be used for each formulation of infant formula. Any new manufacturing or packaging site would need to be cleared by FDA for each formulation before it may be used.

26. ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████

27. EH formula is hypoallergenic and requires special handling to ensure that there are no allergens in the product. ████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████.

28. Perrigo's EH formula is vital for those infants that require it and is a much more affordable alternative than any other EH brands on the market in the United States.

### *Recent Interactions Between Perrigo and Mead Johnson*

29. Beginning in approximately 2021, Mead Johnson began failing to keep its agreed upon infant formula packing schedule for Perrigo. Perrigo contacted Mead Johnson about these issues, and Mead Johnson representatives were responsive to working with Perrigo to resolve them. Perrigo understood that after Mead Johnson's acquisition of Maple Island, the company was attempting to make changes and improvements to the packing facility and its service.

30. On September 27, 2022, Perrigo representatives visited Mead Johnson's Wanamingo packing facility and discussed with Mead Johnson representatives the importance of Mead Johnson's packing obligations for Perrigo's infant formula, as well as Mead Johnson's various problems with maintaining its packing schedule. Mead Johnson's representatives affirmed Mead Johnson's commitment to honor the terms of the Agreement.

31. On December 9, 2022, representatives of Mead Johnson and Perrigo attended a teleconference during which representatives of Mead Johnson—for the first time—stated that Mead Johnson would not meet its contractual obligations with Perrigo. Specifically, Mead Johnson indicated that it would only be packing ▮▮▮▮ in December 2022 and ▮▮▮▮ in January 2023, that it would ▮▮▮▮ for Perrigo in February and March, that it would ▮▮▮▮ for Perrigo in the first quarter of 2023, and that it would get back to Perrigo within 30 days regarding whether it could pack infant formula for them ▮▮▮▮.

32. Perrigo has attempted to communicate with Mead Johnson's senior representatives in order to resolve this dispute. On December 12, 2022, representatives of Mead Johnson and Perrigo attended a subsequent teleconference during which representatives of Mead Johnson again stated that Mead Johnson would only pack ▮▮▮▮ of Perrigo infant formula

(including product currently sitting at the Mead Johnson Wanamingo facility) in December, and ███████████████ in January. Due to Mead Johnson's refusal to fulfill its obligations under the Agreement, hundreds of thousands of pounds of infant formula are at risk of expiration before packaging.

33. Perrigo sent Mead Johnson a letter on December 15, 2022 detailing Mead Johnson's obligations under the Agreement, and since that date has consistently attempted to engage in high-level discussions with appropriate Mead Johnson executive officers in order to resolve this dispute.

34. In a letter dated December 19, 2022, Mead Johnson indicated that it could not fulfill its infant formula packing obligations to Perrigo pursuant to the Agreement due to commitments to the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"). WIC is a long-standing program to deliver infant formula to at-risk families which has been in existence since the 1970's. Perrigo of course understands the importance of this program. In fact, Perrigo also supports it with its own infant formula. But Mead Johnson has been able to produce and sell over 35 million pounds of non-WIC product in the United States thus far in 2022. In fact, the United States Department of Agriculture Food and Nutrition Service recently announced on December 19, 2022 that they are extending waivers to allow for non-contract formula and alternative sizes—like Perrigo's and Mead Johnson's products—for contract formula through the end of February 2023.

35. In its December 19 letter, Mead Johnson assured Perrigo that it would pack ███████ ███████ of Perrigo's infant formula in December 2022, and ███████████████ in January. But this assurance ignored the fact that Perrigo currently has over ███████████████ of infant formula located at Mead Johnson's packing plant and at Perrigo's manufacturing facility. This

11

means that hundreds of thousands of pounds of infant formula are at risk of expiration before packaging.

### *Mead Johnson's Refusal to Honor the Agreement Causes Irreparable Harm to Perrigo and the Public*

36. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████.

37. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████.

38. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████.

39. ███████████████████████████████████████, and to those families that rely on infant formula. Mead Johnson's refusal to honor the Agreement will cause severe reputational harm to Perrigo and its affiliates—both their reputation with the public and with other third parties—particularly in the context of the current infant formula crisis in the United States.

40. Perrigo is attempting to mitigate its damages to secure an alternate packer for its infant formula including its EH infant formula.

41. Perrigo understands the seriousness of the infant formula crisis and continues to participate in weekly calls with the FDA, and as requested, the Department of Health and Human Services to ensure it is doing all it can throughout the infant formula shortage. Until December 13, 2022, Perrigo's 550+ infant formula team—based in Ohio and Vermont—were running its facilities 24 hours a day, seven days a week in order to get more infant formula product to consumers. But following Mead Johnson's inadequate response to Perrigo's December 15, 2022 letter ("Mead Johnson's December 19 Letter") and December 21, 2022 email, which failed to address Mead Johnson's breaches of the Agreement or provide appropriate assurances, ▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

## FIRST CLAIM FOR RELIEF
### (Breach of Contract - Specific Performance)

42. Perrigo realleges and incorporates herein the allegations of the paragraphs above as if fully set forth herein.

43. The Agreement is a valid and binding contract between Mead Johnson and Perrigo, which is governed by New York law. In breach of the Agreement, Mead Johnson has failed to meet its packing obligations in 2022. Further, Mead Johnson has made clear that it does not intend to meet its packing obligations under the Agreement in 2023.

44. Mead Johnson breached the Agreement when it failed to perform its obligations to provide packaging services to Perrigo in accordance with the terms of the Agreement, and Mead Johnson was not excused from performing its obligations.

45. Perrigo materially performed all its obligations under the Agreement and is ready, willing and able to perform its remaining obligations under the Agreement.

46. Perrigo and Mead Johnson are each able to continue performing their obligations under the Agreement as Mead Johnson was not excused from performing its obligations.

47. Perrigo has no adequate remedy at law for the resulting loss of reputation, good will, and business opportunities caused by Mead Johnson's breach of the Agreement.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief)

48. Perrigo realleges and incorporates herein the allegations of the paragraphs above as if fully set forth herein.

49. The Agreement is a valid and binding contract between Mead Johnson and Perrigo, which is governed by New York law.

50. Mead Johnson breached the Agreement when it failed to perform its obligations to provide packaging services to Perrigo in accordance with the terms of the Agreement, and Mead Johnson was not excused from performing its obligations.

51. Perrigo materially performed all its obligations under the Agreement and is ready, willing and able to perform its remaining obligations under the Agreement.

52. The foregoing allegations demonstrate that Perrigo is likely to succeed on the merits.

53. Perrigo has no adequate remedy at law for the resulting loss of reputation, good will, and business opportunities caused by Mead Johnson's breach of the Agreement.

54. The balance of hardships decidedly tips in Perrigo's favor as Perrigo's and its affiliates' continued business, business relationships and goodwill, is threatened by Mead Johnson's breach of the Agreement while Mead Johnson will suffer no harm by continuing to perform its duties under the Agreement.

55. The public interest is served by granting Perrigo injunctive relief, particularly given the public health need to avoid the waste of infant formula ready to be packaged but at risk of imminent expiration and the related need to maintain a steady flow of the planned production and supply of formula in the future.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract - Damages)

56. Perrigo realleges and incorporates herein the allegations of the paragraphs above as if fully set forth herein.

57. The Agreement is a valid and binding contract between Mead Johnson and Perrigo, which is governed by New York law. In breach of the Agreement, Mead Johnson has failed to meet its packing obligations in 2022. Further, Mead Johnson has made clear that it does not intend to meet its packing obligations under the Agreement in 2023.

58. Mead Johnson breached the Agreement when it failed to perform its obligations to provide packaging services to Perrigo in accordance with the terms of the Agreement, and Mead Johnson was not excused from performing its obligations.

59. Perrigo materially performed all its obligations under the Agreement and is ready, willing and able to perform its remaining obligations under the Agreement.

60. Perrigo has suffered direct damages as a result of Mead Johnson's breach in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

61. Perrigo realleges and incorporates herein the allegations of the paragraphs above as if fully set forth herein.

62. The Agreement is a valid and binding contract between Mead Johnson and Perrigo, which is governed by New York law.

63. Mead Johnson owed Perrigo a duty to act in good faith and conduct fair dealing when fulfilling its obligations to Perrigo pursuant to the Agreement, including fulfilling its delivery obligations to Perrigo in a manner reflecting good faith with respect to the timing and prioritization of how and when Mead Johnson arranges for packaging.

64. Mead Johnson breached that duty by, among other things, reducing the agreed-to amounts of packaging services under the Agreement.

65. Perrigo has suffered direct damages as a result of Mead Johnson's breach of its independent duty to act in good faith and conduct fair dealing when addressing its obligations to Perrigo pursuant to the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Perrigo requests that the Court enter an order or judgment in its favor against the Mead Johnson as follows:

(a) Awarding Perrigo injunctive relief to redress the irreparable harm suffered by Perrigo that cannot be cured by monetary damages, including enjoining Mead Johnson from taking or omitting to take any action that would prevent Mead Johnson from providing packaging services to Perrigo under the Agreement, requiring Mead Johnson to specifically perform its obligations under the Agreement;

(b) Awarding Perrigo all direct damages suffered by Perrigo as a result of Mead Johnson's breach of the Agreement;

(c) Awarding Perrigo all direct damages suffered by Perrigo as a result of Mead Johnson's breach of its independent duty to act in good faith and conduct fair dealing;

(d) Awarding Perrigo pre-judgment interest, post-judgment interest, and costs, including attorneys' fees, and

(e) Awarding Perrigo such other relief as this Court may deem just and proper.

Dated: January 3, 2023

GREENBERG TRAURIG, LLP

By: _____
Richard A. Edlin
Scott Bornstein
Hal S. Shaftel
Maura E. Miller
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
edlinr@gtlaw.com
scott.bornstein@gtlaw.com
shaftelh@gtlaw.com
maura.miller@gtlaw.com

*Attorneys for Plaintiff*